**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-cr-00086-REB

**UNITED STATES OF AMERICA**,
Plaintiff,

v.

**3. DAVID WINSTON** ,
Defendant.

---

**DEFENDANT DAVID WINSTON'S MOTION FOR A SENTENCE OUTSIDE THE ADVISORY SENTENCING GUIDELINE RANGE BASED UPON THE FACTORS SET FORTH IN TITLE 18 U.S.C. § 3553(a)**

---

COMES NOW, **Mr. David Winston**, by and through his attorney, David L. Owen, Jr., in accordance with Rule 47, Fed. R. Crim. P., and moves this Court for a sentence outside the advisory sentencing guideline range based upon the factors set forth in Title 18 U.S.C. § 3553(a). Specifically, Mr. Winston requests this Court to impose a sentence of 24 months as sufficient, but not greater than necessary, to accomplish the stated goals of sentencing.

**Procedure for Imposing Sentence**

The United States Supreme Court set forth the procedure to be used by the District Court when imposing sentence and clarified the standard for review of District Court sentences by the appellate courts. *Gall v. United States*, 128 S. Ct. 586, 594 (2007); *Kimbrough v. United States*, 128 S. Ct. 558, 575 (2007).

First, the district court must accurately calculate the applicable Guidelines range. *Gall*, 128 S. Ct. at 596. After considering the correct Sentencing Guideline range, the district court must then consider all of the § 3553(a) factors to determine the appropriate sentence. *Id*. The district court "must make an individualized assessment based on the facts presented." *Id*. at 597. If the district court determines that a sentence outside the Sentencing Guidelines is most appropriate, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. Importantly under *Gall*, factors disfavored by the Sentencing Commission, such as the age of the defendant or family circumstances, may be relied on by the district court in fashioning an appropriate sentence. 128 S. Ct. at 602. In determining the sentence, the Guidelines are just one factor for the Court to consider. *Gall*, 128 S. Ct. at 596. The Guidelines are not to be given any favor and ***the court is prohibited from presuming that a guideline sentence is reasonable***. 128 S. Ct. at 597 (Emphasis added).

*Gall* makes clear the sentencing court has broad discretion in determining the appropriate sentence under 18 U.S.C. 3553(a) and that the court is not bound by the confines of the Guidelines. In rejecting a Guideline-centric approach to sentencing, the Supreme Court recognized that the sentencing judge has greater familiarity with the case and the defendant before it than the appellate courts or the Sentencing Commission and is therefore "in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 128 S. Ct. at 597-98; *see also*

*Kimbrough*, 128 S. Ct. at 574.

**18 U.S.C. 3553(a) Sentencing Factors**

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph 2."(emphasis added). Section 3553(a)(2) states that such purposes are:

(a) to reflect the seriousness of the offense, to promote respect for the law, and to Provide just punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, §3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§3553(a)(1);

2) "the kinds of sentences available" (§3553(a)(3);

3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§3553(a)(6); and

4) "the need to provide restitution to any victims of the offense." (§3553(a)(7)).

Other statutory sections also give the district court direction in sentencing.

Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: "in determining whether and to what extent imprisonment is appropriate based on the §3553(a) factors, the judge is required to "recogniz[e] that **imprisonment is *not* an appropriate means of promoting correction and rehabilitation**"" (emphasis added). Under 18 U.S.C. §3661, "***no limitation*** shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). In sum, in every case, a sentencing court must now consider all of the §3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in §3553(a), these statutory sentencing factors should generally trump the guidelines. *See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since §3553(a) requires the sentence be no greater than necessary to meet the four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## Application of the Statutory Sentencing Factors to the Facts of this Case and Reasons for a Below Guideline Sentence

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender:**

**(a) Nature and Circumstances of Offense:**

The statement concerning the nature and circumstances of the offense are taken from the Stipulation of Facts section of the Plea Agreement. As this statement contains all the pertinent information concerning Mr. Winston's involvement in the offense that section is repeated here.

On July 28, 2017, at approximately 9:50 p.m., the defendant, David Winston, and his co-defendants, Brainard Clark and Damien Lewis, burglarized Hometown Pharmacy & Medical, located at 824 East Main Street in Trinidad, Colorado. In total, Winston and his co-defendants stole 7,430 pills of hydrocodone. The value of the stolen pills is approximately $148,600.

At approximately 9:50 p.m., co-defendant Lewis, dressed in black clothing (black sweater pulled up so you can see a white under-shirt) and red gloves uses a yellow crow bar and attempts to pry the front door open. One of the co-defendants then used a smaller black crow bar and helped Lewis pry the front door open. The defendants entered the pharmacy at approximately 9:51 p.m. They spent a total of 52 seconds in the pharmacy. Surveillance video shows

Lewis leaving with the same yellow crow bar and one of the co-defendants leaving with a trash can filled with pills and bottles.

On October 5, 2017, Federal Bureau of Investigation ("FBI") Task Force Officer ("TFO") Mace authored a federal cell phone search warrant for Winston's cellular phone. TFO Mace requested, *inter alia,* historical call detail records. United States Magistrate Judge Hegarty granted the search warrant. Review of the records indicate that Winston's cell was at or near the pharmacy in Trinidad, Colorado during the burglary. At the time of the burglary, Winston did not live in Trinidad, Colorado; he lived in Colorado Springs, Colorado.

TFO Mace requested, received, and reviewed surveillance video from the burglary. TFO Mace is familiar with Winston through the course of this ongoing investigation. TFO Mace pulled a still shot from the burglary and positively identified Winston. At the time of the still shot, Winston's facial covering did not fully hide his facial features.

Hometown Pharmacy & Medical is registered with the DEA under 18 U.S.C. § 822 and was so at the time of the July 28, 2017 burglary. The total approximate value of the stolen hydrocodone pills exceeds $500, *i.e.,* $148,600.

**(b) History and Characteristics of Mr. Winston:**

**CHILDHOOD**

David Winston was born on November 22, 1990, in Memphis, Tennessee to the union of David Owens and Teresa Winston. David Winston had 3 brothers

and 1 sister. All the brothers were born by Teresa Winston. One brother, Raphael, died from a gunshot wound to the head. Brother, Damon Lewis, is a co-defendant in the instant case. Brother, Desmond Owens, is currently in the Colorado Department of Corrections. David Winston's sister is Wanesa Owens and is located in San Diego, California. Mr. Winston has never met his sister.

**HOME and NEIGHBORHOOD**

On November 22, 1990 David Winston was born. The family was residing with his paternal grandmother, in Memphis, Tennessee.

After David finished elementary school in Memphis, the family moved to Colorado Springs, CO, where they moved in and lived with a friend of his parents, Marion Scott. At this point, David's parents abandoned their four children with Ms. Scott leaving her with a total of 12 children to raise. His father was a drug addict and his mother is an alcoholic.

Due to the increased number of children in her home, Ms. Scott was not able to adequately provided the necessities of life. As her children were older than David and his brothers, they taught David and his brother how to steal whatever would bring money into the house for food, clothing, etc. It was in this way David was raised and became the only manner he knew to provide for his daily necessities. Ms. Scott utilized whippings with a belt to administer punishment for behavioral infractions which caused her any inconvenience.

When David was 16 years old, around 2006/2007, he moved in with

Tominica Watkins, the mother of his first child, Tyaza Owens. This arrangement only lasted a short time, approximately till 2008. After this, David lived off and on with Shannon Goudeau (the mother of David Winston, Jr.).

In 2014, David moved to Toledo, Ohio to live with his grandmother, Sheila McCarver. He lived there for approximately one and a half years where he had an apartment on his own. He ended up leaving because it reminded him too much of Tennessee.

**SUBSTANCE ABUSE**

Mr. Winston was first introduced to smoking marijuana on a daily basis while living with Ms. Scott. He has continued daily use ever since; however, he has never ingested cocaine, methamphetamine, LSD or heroin. David does not believe he has a drug problem and has not requested drug and alcohol treatment.

He does not drink alcohol but has drank champagne.

**CRIMINAL HISTORY**

Mr. Winston has had extensive contact with law enforcement beginning at age 15 when he pleaded guilty to Burglary 2 of a Building. At age 16 he pleaded guilty to possession of Burglary Tools and in a separate case - Distribution of Marijuana. At age 17 he pleaded guilty to Theft $1,000 - $20,000.

Since becoming an adult he has pleaded guilty to Harassment (age 18), Driving Under Restraint (ages 20 and 21), Driving After Revocation (age 22), Trespass 1 - Dwelling (age 23), 3d Degree Assault (age 23), 2d Degree Burglary

of a Building (age 25), and finally, 1st Degree Trespass - Auto with Intent to Commit Crime (age 26).

David Winston has never been associated with any gang membership or activity.

**MILITARY SERVICE**

David Winston has never served in the military.

**MARRIAGE and CHILDREN**

Mr. David Winston has fathered 5 children:

Tyaza Owens - daughter - 11 years old - mother Tominica Watkins

Kalazha Roever - daughter - 9 years old - mother Barbara Roever

Dyuzus Owens - son - 9 years old - mother Tomonica Watkins

David Winston, Jr. - son - 6 years old - mother Shannon Goudeau

Taxton Winston - son - 1 year old - mother Thatorria Winston

Mr. Winston married to Thatorria Winston, the mother of Taxton Winston in Las Vegas, Nevada in June, 2018. However, they have been separated since June, 2019. Ms. Winston now lives in Florida.

Mr. Winston does have communication with all of his children. He is not court ordered to pay child support; however, he does provide financial support to the mothers of all his children when he is capable.

David is currently in a committed relationship with Patricia Cleveland of Colorado Springs, Colorado.

**EDUCATION**

As previously noted, he attended elementary school in Memphis, Tennessee. David Winston had an Individual Education Plan (I.E.P.) throughout his schooling. When the family moved to Colorado Springs, he attended Watson Middle School. He attended and completed the 11th grade at Cheyenne Mountain High School but never attended school his senior year. David was suspended many times for smoking in school and not paying attention in class. He was expelled once for having too many suspensions. None of the suspensions or discipline issues were for violent behavior.

David did take GED courses while incarcerated at Bent County Correctional in 2019. Records have been requested but not received.

**EMPLOYMENT**

At the time of his arrest, David was working at Kolbe Striping earning $16.00 per hour for dropping and painting lines on roadways. He has also had daily work at Poncho's Roofing.

**PHYSICAL and MENTAL HEALTH**

Mr. Winston sometimes experiences severe headaches, suffers from Epileptic seizures but does not take any medication for them. He also has hypertension. A car accident has left him with back pain, he is not prescribed any medication for this condition. Requests have been made to the staff at GEO ICE Detention Facility personnel to have an MRI done to ascertain the source of the

pain. Those requests have forwarded to the U.S. Marshal for the District of Colorado who ultimately denied the requests.

**FINANCIAL INFORMATION**

David Winston does not have any assets. He does pay child support when able and he does have medical debts.

**PLANS AFTER RELEASE FROM INCARCERATION**

Mr. Winston does plan to return to the Colorado Springs area where he will live with his family and continue his relationship with Ms. Cleveland. He also has plans to pursue a degree in welding, automotive repair and/or automotive dealers license. Once he is sufficiently proficient in that particular field he plans to start his own business.

**2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

**(a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense:**

A 24 month term of incarceration does reflect the seriousness of the offense. Being incarcerated for that length of time is a serious wake-up call for Mr. Winston.

David Winston submits it is just punishment for the crime. This is because he, nor the other people involved, resorted to violence to accomplish these burglaries.

**(b) to afford adequate deterrence to criminal conduct:**

In spite of the behavior of his youth, David Winston has taken stock of the direction of his life. With his brother Desmond's sentence to 96 years as an Habitual Criminal, David Winston has seen this is not the life path he wishes to take. A sentence to 24 months will keep Mr. Winston removed from society. This will, in conjunction with his stated goals for the future, operate as an adequate deterrence to future criminal conduct and still permit him the opportunity to pursue his goals before he becomes too old to obtain a degree and to compete in society for full employment.

It should be further noted, the instant offense was committed prior Mr. Winston's incarceration for his conviction for Trespass 1 - Auto With Intent to Commit Crime in El Paso County case # 2017-cr-2946. After his release from incarceration David was gainfully employed, in a committed relationship and leading a law abiding life prior to his arrest for the instant offense. This is not a new offense after being released from incarceration.

**(c) to protect the public from further crimes of the defendant:**

As these two objectives (subsections (b) & (c) of Title 18 U.S.C. §3553 (a) appear to seek the same goal, please refer to the argument for subsection **(b)**.

**(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner:**

A sentence of 24 months would be sufficient, but not greater than necessary, to provide David with the needed medical care. The Bureau of Prisons

have medical doctors in each facility as well as dedicated medical hospitals which could provide David with a diagnosis of his back pain problems, appropriate diagnosis and treatment for his seizures and, determine the source cause of his severe headaches.

For Mr. Winston to acquire needed educational or vocational training a sentence of 24 months would be sufficient to finish his GED (if not already graduated) and to obtain some higher education, as well as, some vocational training in welding or automotive mechanics.

Correctional treatment can be accomplished within the requested 24 month sentence.

**3. The Kinds of Sentences Available**:

**Statutory:**

For a violation of Title 18 U.S.C. § 2118(b) the maximum penalty is not more than 20 years incarceration.

**Probation**

A sentence to probation is not prohibited by 18 U.S.C. § 3561.

**Sentencing Guidelines**

Included in the plea agreement is the estimate of the parties as to the proper calculation of the sentencing guidelines in this case. According to the statutory index a violation of Title 18 U.S.C. §2118(b) the guideline section applicable is U.S.S.G. § 2B2.1(a)(2).

2B2.1(a)(2).................Burglary other than a residence...................................12

2B2.1(b)(1).................More than minimal planning.......................................... 2

2B2.1(b)(2)(D)............Loss greater than $95,000, less than $500,000............. 3

2B2.1(b)(3).................Controlled substance taken.......................................... 1

18

3E1.1(a) & (b)............Acceptance of Responsibility........................................- 3

**Total adjusted offense level...................15**

At the time of the plea agreement the parties calculated Mr. Winston's criminal history category as V - Offense level 15 & Criminal History category V provides a sentencing guideline recommendation of 37 - 46 months.

However, undersigned counsel has recalculated Mr. Winston's criminal history points as 15 which placing him in criminal history category VI.

***Offense level 15 & Criminal History category VI provides a sentencing guideline recommendation of 41 - 51 months.***

**Supervised Release**

Violation of Title 18 U.S.C. §2118(Pursuant to Title 18 U.S.C. § 3583(b)(2) a term of supervised release not exceeding 3 years.

**Fine**

Pursuant to Title 18 U.S.C. § 3571(b)(3) not more than $250,000.00.

**Mandatory Special Assessment**

$100.00 per count of conviction - 18 U.S.C. § 3013(A)(2)(A)

**Overall view toward sentencing of David Winston**

Though a thorough mental evaluation of David has not be prepared for the Court to review in anticipation of determining an appropriate sentence there is an additional factor which need to be considered.

It has been well documented that childhood trauma has a direct impact on a person's mental development and the ability to develop appropriate decision making skills, social interactions and feelings of self worth.

A recounting of David's childhood reveals an existence begun in poverty, psychological issues (P.T.S.D. & depression), abandonment issues, instability in living conditions, surrounded by alcohol and narcotic abuse. David Winston has never had a "normal" life. His education was mainly limited to learning daily survival skills. Unfortunately, in the environment he was raised, there was no strong demarcation between legal and illegal means to achieve survival. These are factors which should be taken into account in fashioning an appropriate sentence.

Wherefore the reasons stated above, Mr. Winston respectfully requests this Court to consider the above discussed factors, find a sentence within the sentencing guideline range is greater than necessary to accomplish the goals of sentencing established in Title 18 U.S.C. §3553(a) and find a sentence of 24 months on Count Two sufficient, but not greater than necessary, to accomplish the sentencing goals.

Date: September 21, 2020

Respectfully submitted,

/s/ David L. Owen, Jr.
Attorney Reg. No.: 39669
Law Office of David L. Owen, Jr., P.C.
718 Huntington Place
Highlands Ranch, CO 80126
(303) 993-7092
(303) 265-9202 - fax

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

AUSA Jason St.Julien - Jason.St.Julien@usdoj.gov

AUSA Jaime Pena - jaime.pena@usdoj.gov

USPO Gary Kruck - Gary_Kruck@cod.uscourts.gov

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

David Winston - personal service

/s/ David L. Owen, Jr.
David L. Owen, Jr.