```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF COLORADO

 3
     Criminal Action No. 19-cr-00086-REB-3
 4

 5    UNITED STATES OF AMERICA,

 6           Plaintiff,

 7           vs.

 8    DAVID WINSTON,

 9           Defendant.

10   -------------------------------------------------------------

11                       REPORTER'S TRANSCRIPT
                          SENTENCING HEARING
12
     -------------------------------------------------------------
13
             Proceedings before the HONORABLE ROBERT E. BLACKBURN,
14   Judge, United States District Court for the District of
     Colorado, commencing at 2:59 p.m. on the 28th day of
15   October, 2020, via videoteleconference in Courtroom A1001,
     Alfred A. Arraj United States Courthouse, Denver, Colorado.
16

17
                             APPEARANCES
18
     For the Plaintiff:
19   JASON A. ST. JULIEN, Assistant U.S. Attorney, UNITED STATES
     ATTORNEY'S OFFICE, 1801 California Street, Suite 1600, Denver,
20   CO 80202

21   For the Defendant:
     DAVID L. OWEN, JR., LAW OFFICE OF DAVID L. OWEN, JR., P.C.,
22   718 Huntington Place, Highlands Ranch, CO 80126

23

24
         JULIE H. THOMAS, RMR, CRR, 901 19th Street, Room A256,
25        Denver, CO 80294, (303)296-3056  (CA CSR No. 9162)

             Proceedings reported by mechanical stenography;
                  transcription produced via computer.
```

1          (Proceedings commenced 2:59 p.m.,

2          October 28, 2020.)

3               COURTROOM DEPUTY:  Good afternoon.  Court is in

4     session.

5               THE COURT:  Thank you, Madam Clerk.

6               Please open the record in 19-cr-86, United States of

7     America versus defendant #3, David Winston.  The matter is

8     before this Court for sentencing, at which the Government

9     appears and participates remotely by VTC by Assistant United

10    States Attorney Jason St. Julien.  Good afternoon.

11              MR. ST. JULIEN:  Good afternoon, Your Honor.

12              THE COURT:  Defense counsel, David Owen, also appears

13    and participates remotely by VTC.  Good afternoon.

14              MR. OWEN:  Good afternoon, Your Honor.

15              THE COURT:  Defendant #3, Mr. David Winston, appears

16    and participates remotely by VTC.  Good afternoon.

17              THE DEFENDANT:  Good afternoon, Your Honor.

18              THE COURT:  Madam Clerk, is a probation officer

19    present and participating?

20              COURTROOM DEPUTY:  Yes, Your Honor.  We just don't

21    see everyone on the video, but I will put Mr. Kruck up there.

22              THE COURT:  I see him now.

23              The supervising and relevant probation officer,

24    Mr. Gary Kruck, appears and participates remotely by VTC.

25    Good afternoon now in this hearing.

1          PROBATION OFFICER:  Good afternoon, Your Honor.

2          THE COURT:  Very well.  I return to you, Mr. Winston.

3    To the extent that you can, please raise your right hand to be

4    sworn by the Court.  Thank you.

5        (The defendant was sworn.)

6          THE COURT:  Thank you.  Mr. Winston, first I need

7    some information about you from you.  My questions are not

8    intended or designed to trap you, embarrass you, offend you,

9    or insult you, and hopefully my questions will not have that

10   effect.

11          Mr. Winston, how old are you?

12          THE DEFENDANT:  29, Your Honor.

13          THE COURT:  How many years of formal education do you

14   have?

15          THE DEFENDANT:  Eleven.

16          THE COURT:  Do you have any problems reading,

17   writing, speaking, or understanding English?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Are you currently under the influence of

20   or impaired in any way by drugs, narcotics, marijuana,

21   alcohol, medications, or any intoxicant?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  To your knowledge, as a young layperson,

24   do you have a mental illness or an emotional disability?

25          THE DEFENDANT:  No, Your Honor.

1           THE COURT:  And, lastly, is there anything about the

2  way you feel this afternoon -- excuse me -- physically or

3  emotionally, that prevents you from clearly understanding

4  these proceedings?

5           THE DEFENDANT:  No, Your Honor.

6           THE COURT:  And, importantly, are you prepared to

7  proceed?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  Mr. Winston, please be advised that you

10  have the right to have this sentencing hearing conducted in a

11  regular or traditional courtroom where you, your attorney, and

12  this Court are all in the same place at the same time.  Do you

13  understand that?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  However, you may waive or give up that

16  right and instead consent to appear and participate in your

17  sentencing hearing remotely by videoteleconferencing or VTC

18  where you, your attorney, and the Court are each in a

19  different location.  Do you understand that?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  These are important rights but competing

22  rights; that is, only one can prevail at a time.  Do you

23  understand that?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Have you discussed these important rights

1   carefully and thoroughly with your attorney?

2          THE DEFENDANT:  Yes, I have, Your Honor.

3          THE COURT:  And considering all circumstances, do you

4   now waive or give up your right to have this sentencing

5   hearing conducted in a regular courtroom where you, your

6   attorney, and the Court are all together in the same place?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  And do you instead consent to have your

9   sentencing hearing conducted remotely by VTC where you, your

10  attorney, and the Court are each in a different location?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Has anyone pressured, coerced, forced, or

13  threatened you to make this election between these rights?

14         THE DEFENDANT:  No, Your Honor.

15         THE COURT:  And may I treat your election and

16  decision as being made by you voluntarily, knowingly,

17  intelligently, and intentionally?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Thank you.

20         Counsel, do you request or require any further

21  advisement by the Court on this discrete subject?  The

22  Government, Mr. St. Julien?

23         MR. ST. JULIEN:  No, Your Honor.

24         THE COURT:  The defense, Mr. Owen?

25         MR. OWEN:  No, Your Honor.

1           THE COURT:  On this record I find and conclude that

2    we may and should conduct this sentencing hearing remotely by

3    VTC.

4           As required both by federal statute and Rule of

5    Criminal Procedure, the Probation Department, through

6    Mr. Kruck, has conducted a presentence investigation and filed

7    a presentence investigation report, the final and operative

8    version of which is document 135, filed October 1, 2020.  For

9    our purposes, references to the presentence report will

10   include this presentence investigation report -- excuse me --

11   together with its sentencing recommendation, document 135-1,

12   and the related addendum to the presentence report, document

13   136.

14          Mr. St. Julien, have you read that presentence

15   report?

16          MR. ST. JULIEN:  Yes, Your Honor, I have.

17          THE COURT:  Are there any additions or corrections of

18   a material or substantive nature not now of record?

19          MR. ST. JULIEN:  No, Your Honor.

20          THE COURT:  Mr. Owen, three related and relevant

21   questions:  First, have you read that presentence report?

22   Second, to your knowledge, has Mr. Winston read that

23   presentence report?  And, third, have you reviewed and

24   discussed that presentence report carefully and thoroughly

25   with Mr. Winston?

1          MR. OWEN:  I can answer yes to all three questions,

2   Your Honor.

3          THE COURT:  Are there any additions or corrections of

4   a material or substantive nature not now of record?

5          MR. OWEN:  Nothing that would actually affect the

6   guideline calculations.  However, we did file I think four

7   objections to certain aspects of the PSI.

8          THE COURT:  And those are of record, of course.

9          MR. OWEN:  Yes, sir.

10          THE COURT:  That's a nice segue for me to note that

11   there are additional papers that are sentence related, each of

12   which I have received, read, and reviewed carefully and

13   thoroughly.  I begin with Defendant David Winston's objections

14   to the preliminary presentence investigation report, document

15   131, filed September 21, 2020; Defendant David Winston's

16   motion for a sentence outside the advisory sentencing

17   guideline range based upon the factors set forth in Title 18

18   U.S.C. Section 3553(a), document 132, filed September 21,

19   2020; and, lastly, the Government's motion to dismiss counts,

20   document 139, filed October 14, 2020, which motion was

21   anticipated by the parties in their plea agreement and which

22   motion I will grant at the appropriate time.

23          Very well.  Back to you, Mr. Owen.  I inquire at some

24   length, as I must, as follows:  Do you wish to make a

25   statement on behalf of Mr. Winston, offer additional

1    information in mitigation, lessening of his punishment,

2    comment further on the various determinations of the probation

3    officer in the presentence report, and be heard on matters

4    relating to the appropriate sentence?

5              MR. OWEN:  Yes, Your Honor.  Thank you.

6              THE COURT:  You're welcome, and you may.

7              MR. OWEN:  We objected to -- made four objections to

8    the contents in the presentence investigation report.  As I

9    stated earlier, none of them have actual impact upon the

10   guideline calculation.  However, this is information that will

11   follow Mr. Winston to whatever BOP facility that he will be

12   designated to, and his security level will be affected by that

13   as well as general information getting out that, you know, he

14   is supposedly involved in some other stuff other than what

15   he's been sentenced for.

16             Now, most of the objections have to do with

17   codefendants' actions, not his, and we would object to that.

18             The objection pertaining to paragraph 28 on page 6,

19   that is pure speculation, and it just -- speculative

20   conclusions contained in that paragraph with no real basis

21   behind it other than just a mere mention in the discovery.

22             With that said, does the Court wish me to proceed on

23   to arguments in mitigation?

24             THE COURT:  Please.

25             MR. OWEN:  Yes, Your Honor.  As the Court noted, I

1    filed a motion for a sentence outside the sentencing guideline

2    range asking for a sentence of 24 months, claiming that this

3    would be sufficient, but not greater than necessary, to

4    achieve the goals of sentencing.

5           Judge, quite honestly, Mr. Winston has lived one of

6    those lives that are the bread and butter of the social

7    historians in this country.  He grew up in a broken home

8    filled with drugs, addictions, criminal behavior from the

9    beginning of his life.  That's the only thing he's been

10   exposed to.  That was how he was taught how to survive.  He

11   wasn't taught the way that you or I or anyone else was taught

12   on how to get by on a day-to-day basis.  He was taught steal,

13   that's the way you get by.  That -- when you start out

14   learning that from such a young age as Mr. Winston did, it's a

15   hard thing to overcome just because somebody tells you that's

16   not the right way.

17          Him and I have had a number of talks since the

18   beginning of this case about his background, about his life

19   prior to today.  He has acknowledged that these things were

20   not his voluntary actions on growing up, that he did not

21   really have any influence into his maturing.  It was always

22   infected or imposed upon him by somebody else.  We have talked

23   about how to get around that, and I know he's going to speak a

24   little bit about this himself when the Court gives him the

25   opportunity, but he's recognizing that there are certain

1   psychological tricks, for the lack of a better term, that he

2   can employ to prevent himself from following down that

3   original path that he was on.

4          He has a lot of plans for the future, and I believe,

5   Your Honor, that he is very sincere in his desire to get away

6   from this type of lifestyle, not do life imprisonment on the

7   installment plan, and pick up the pieces and move forward like

8   he should.  He's got plans of finishing school, getting some

9   higher education, get something training, and employing those

10  skills in developing his own company, his own business, so

11  that, you know, he's responsible for himself, which is

12  something he's never had to be before.  He is now.

13         Now, I understand that he has a fairly severe

14  background criminal history-wise, and I would ask the Court to

15  take into consideration the comments I've made and find that

16  24 months actually is an appropriate sentence in this

17  situation.  He will be spending time on supervised release,

18  and if the things that he's told me don't pan out, then

19  there's other consequences that he can suffer.

20         That's all I have at this time.

21         THE COURT:  Counsel, thank you.

22         Mr. Winston, back to you, please.  Before I impose

23  any sentence on you this afternoon, you first have the legal

24  right and opportunity now, if you choose, to make your own

25  statement to this Court and to offer any additional

1   information in mitigation, lessening of your punishment, that

2   you may have.  Do you wish to make any such statement or offer

3   any additional information in mitigation?

4            THE DEFENDANT:  Um, yes, Your Honor.

5            THE COURT:  And you may.  I remind you that you

6   continue to participate in this sentencing hearing under oath.

7            Please, what is it that you would tell the Court?

8            THE DEFENDANT:  Um, Your Honor, most of all and first

9   of all, I want to, you know, accept responsibility for my

10  actions.  Um, you know, um, to some of what my attorney said,

11  you know, I have an extensive long background of corruption.

12  I didn't, you know, too much grow up in the best environment,

13  you know.

14           With that being said, I also know wrong from right.

15  And I also have, you know, children that depend on me, and I

16  don't want to continue to go down this road and have them left

17  to a father future that I was left to where I didn't have a

18  father there that was teaching me wrong and right.  I don't

19  want to be able to have them out there living that type of

20  life because they are innocent children that, you know, didn't

21  ask to come here, you know, to this world.

22           So that being said, Your Honor, I just, you know,

23  want to be able to have the time to, you know, utilize and

24  look over into life to a positive, you know, mind frame, you

25  know.  Like prior to this indictment I was incarcerated to DOC

1    to a 24-month sentence, and once I was released, you know, I

2    seen -- I looked at life different.  That was the first time I

3    ever had a job.  That was the first time I ever had my own

4    apartment in my name.  It was the first time that I started

5    looking at life different.  And then, you know, this

6    Indictment came along, and here I go now.  So whatever takes

7    place today, Your Honor, when I'm released I want to continue

8    that same path I was prior to me being indicted.

9            THE COURT:  It appears that we have -- may have lost

10   connections with Mr. Winston.

11           COURTROOM DEPUTY:  I think he just may have finished,

12   Your Honor.

13           THE COURT:  Pardon me?

14           THE DEFENDANT:  Hello?

15           COURTROOM DEPUTY:  He just may have finished

16   speaking.

17           THE COURT:  Yes.  Can you hear us, Mr. Winston?

18           THE DEFENDANT:  Yes, Your Honor.  Yes, Your Honor.

19           THE COURT:  Have you completed your sentencing

20   statement to the Court?  I couldn't tell.

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  Very well.  Thank you.

23           Very well.  Mr. St. Julien, does the Government wish

24   to be heard on matters relating to the appropriate sentence?

25           MR. ST. JULIEN:  Yes, Your Honor.

1          THE COURT:  And you may, of course.

2          MR. ST. JULIEN:  Thank you, Your Honor.

3          Your Honor, pursuant to the terms and conditions of

4   the plea agreement, the Government recommends a sentence of

5   41 months imprisonment, which is a low end of the guideline

6   sentence.  And the Government is requesting that

7   specifically -- if we look at Mr. Winston's history, I agree

8   with Mr. Owen that he was taught to steal, and that's what

9   he's been doing.  So I state that to say this offense for

10  which he is charged is not an isolated occurrence.  If we look

11  back to his history, if we want to combine convictions into

12  the theft/burglary realm, he has three of those as a juvenile.

13  All three of those juvenile adjudications were felony

14  convictions:  one for burglary, one for possession of burglary

15  tools, and one for theft.

16          We now transition to his adult criminal history.  He

17  has four convictions if you want to put those into the theft

18  and burglary context as well.  He has a trespass felony, which

19  was part and parcel of a burglary of Starbucks.  He has a

20  possession of criminal tools conviction that was part and

21  parcel of a burglary of a Radio Shack.  He has a burglary 2

22  felony conviction, and then a breaking and entering

23  conviction.

24          I note all of those, Your Honor, because this is

25  right in line with his history that this type of conviction,

1   burglary of a pharmacy, is evidence of his continued voluntary

2   engagement in this type of behavior.  And I do note that

3   because of this specific type of conviction -- it's not a gun

4   charge -- that it benefits him that some of his criminal

5   history isn't taken into account when you are creating a

6   guideline range.  And I say that because on page 18 of the

7   presentence investigation report he has a conviction for

8   third-degree assault in which he assaulted a woman.  If this

9   were a gun case, the Government would argue that that's a

10  crime of violence, and that would boost his guideline range.

11  So the fact that this is a burglary conviction and it's not a

12  gun conviction now actually benefits him.  So it's not -- his

13  range or his base offense level is not contingent upon prior

14  convictions.  And I do note that Mr. Winston did commit these

15  offenses while he was on probation for that third-degree

16  assault conviction and a burglary 2 conviction.

17          Now, Mr. Winston is a young man.  He's 29 years old.

18  And it's never my -- I believe it's not my duty to just say

19  I'm going to recommend a sentence just to do so.  And so based

20  on what Mr. Winston has stated, based on what Mr. Owen has

21  stated, I do believe that once Mr. Winston leaves

22  incarceration, that he's able to take care of what he needs to

23  take care of so he doesn't put himself in this situation.  And

24  I know that, unless my calculations are wrong, assuming the

25  Court would sentence Mr. Winston to 41 months, which is three

1   and a half years, that's the longest sentence he's ever been

2   sentenced to.  So based on the history, Your Honor, based on

3   the facts of this case, the Government believes that a

4   41-month sentence is sufficient, but not greater than

5   necessary.

6           THE COURT:  Counsel, thank you.

7           Based on this record considered as a whole, this is

8   my sentencing statement under 18 U.S.C. Section 3553(c).

9   Concomitantly, these are my findings of fact, conclusions of

10  law, judgment of conviction, sentence, and orders, commencing

11  with my findings and conclusions.

12          After advisement by the Court, Mr. Winston

13  voluntarily, knowingly, intelligently, and intentionally

14  waived his right to have this sentencing hearing held in a

15  traditional or regular courtroom where he, his attorney, and

16  the Court are all physically present together in the same

17  place and instead consented to appear and participate in this

18  sentencing hearing remotely by VTC where he, his attorney, and

19  the Court are each in a different location.  An expedited

20  sentencing hearing conducted remotely via VTC is necessary in

21  the interest of justice generally and those of the defendant

22  specifically so that he does not languish in a detention

23  facility where essential programs and services are effectively

24  unavailable to him.

25          During his change of plea hearing before this Court

Julie H. Thomas, RMR, CRR                          (303)296-3056

1    on July 22, 2020, Mr. Winston, pursuant to his plea agreement

2    with the Government, voluntarily, knowingly, intelligently,

3    and intentionally entered an unconditional plea of guilty to

4    the crime charged in Count 2 of the superseding indictment,

5    document 44, to the crime of pharmacy burglary in violation of

6    18 U.S.C. Section 2118(b)(1).  The plea agreement now before

7    the Court easily satisfies the standards for acceptance of

8    plea agreements under Guidelines Section 6B1.2.

9            The defendant filed objections to the presentence

10   report.  His objections are presented in his document 131.  I

11   address each in turn.

12           First, the defendant objects to the presentence

13   report at paragraph 28 on the grounds of relevance,

14   essentially.  Having considered all that is available to me, I

15   find that it is relevant and that the Court may and should

16   consider it as it may under 18 U.S.C. Section 3661 and

17   Guidelines Section 1B1.4.  However, the Court announces that

18   it does not intend to weigh this information heavily, if at

19   all, in fashioning and imposing a condign sentence on

20   Mr. Winston.

21           Next, the defendant objects to the presentence report

22   at paragraph 32 on the grounds of relevance, noting that this

23   information will be relevant to the sentencing of Mr. Clark

24   but not Mr. Winston.  The Court respectfully disagrees and

25   discerns sufficient relevance as it relates to the overall

1   conspiracy which is implicated in the criminal conduct of

2   Mr. Winston and others.  And, therefore, that objection is

3   also essentially overruled.

4          Next, the defendant objects to the presentence report

5   at paragraph 33, again arguing that this is perhaps relevant

6   to the sentencing of Mr. Lewis, a codefendant, but not

7   Mr. Winston.  Again, I respectfully disagree.  It goes to the

8   interrelationship of obvious coconspirators and, in that

9   regard, may and should be considered by the Court.  And thus

10  this objection is overruled.

11         Finally, the defendant objects to paragraph 38,

12  noting that restitution will be owed to Hometown Pharmacy, not

13  Homeland Pharmacy, a point well taken by the probation

14  officer, who provides the correction in the final and

15  operative presentence report, document 135.

16         Given the rulings of the Court concerning the

17  objections of the defendant, I accept the final and operative

18  version of the presentence report, document 134 -- 135, excuse

19  me, as an integral part of my findings of fact.

20         Although we're only days away from November 2020, the

21  November 2018 edition of the United States Sentencing

22  Commission Guidelines Manual applies.  Thus I have used that

23  edition and subsequent amendments as the starting point and

24  the initial benchmark for my own sentencing analysis.

25         And although once again I have given respectful

1  consideration to those advisory guidelines, once again I have

2  not presumed the resulting advisory guideline ranges to be

3  reasonable per se.

4          Here identification, consideration, and application

5  of all relevant provisions of those advisory guidelines to

6  this offense, this offender, and all relevant conduct produces

7  a total adjusted advisory offense level of 15 and an advisory

8  Criminal History Category of VI, the highest available, based

9  on the imposition of 19 criminal history points, when only 13

10  are required for placement in Criminal History Category VI.

11          There is no request or reason to depart from the

12  advisory guideline range.

13          Next, as I must and should, I have considered

14  carefully the sentencing factors and needs in the federal

15  sentencing statute at 18 U.S.C. Section 3553(a)(1) through (7)

16  and the defendant's motion for a sentence variance to 24

17  months, document 132, and in that process of analysis have

18  made an individualized assessment based on the facts

19  presented.

20          The nature and circumstances of the offense and count

21  of conviction, Count 2, are essentially as stated and

22  presented first in the plea agreement of the parties, document

23  124, and then in the presentence report.  This was a serious

24  offense committed by a serious offender.  It is the kind of

25  crime, of course, that contributes to the distribution and

1   sale of dangerous controlled substances, which in turn wreaks

2   untold havoc on its victims.

3          Transitioning to the history and characteristics of

4   Mr. Winston, first, I treat him as the unique individual that

5   he is.  His history and characteristics are essentially as

6   presented in the presentence investigation report, document

7   135, beginning on page 2 with Identifying Data, continuing in

8   part B, Defendant's Criminal History, and concluding in part

9   C, Offender Characteristics, and as presented in his motion

10  for a sentence variance, document 132.

11          I focus for a moment on Mr. Winston's extensive and

12  disturbing criminal history.  Beginning with age 15 to the

13  present, the presentence report chronicles and details 19

14  criminal cases, including seven felony offenses, four as a

15  juvenile, and three as an adult.  Relevantly to an

16  understanding of the nature and extent of this criminal

17  history is the fact that for 10 criminal cases no criminal

18  history points were assessed due to their age or other

19  vagaries within the sentencing guidelines.

20          Mr. Winston is before the Court being sentenced for

21  his eighth felony offense, his fourth as an adult.  As noted

22  by Mr. St. Julien, Mr. Winston has a history of trespass,

23  burglary, and theft.  And unless he changes his ways, he's

24  indeed a high risk to recidivate.  Various judicial

25  interventions have failed to reform him or deter him,

1  including costs, fees, imprisonment in the Colorado Department

2  of Youth Corrections, county jail, work release, probation,

3  and lastly the Colorado Department of Corrections.  But as

4  counsel either argue or concede, all Mr. Winston knows because

5  of the manner in which he was raised is to trespass,

6  burglarize, and steal.  And given the milieu in which he was

7  raised, it is easy to understand the difficulty, even as an

8  adult, that he experiences in attempting to surmount or

9  overcome that which is essentially second nature to him and

10  his default position in life.

11        Now, after considering all that I should and must, I

12  conclude that a sentence variance is not warranted in this

13  case.  It will unduly depreciate the seriousness of the count

14  of conviction and relevant conduct.  It will disserve, not

15  promote, respect for the law.  It is not sufficient to achieve

16  deterrence of Mr. Winston individually or others similarly

17  situated or inclined generally and, in my experience, would

18  constitute an unwarranted sentencing disparity.  Instead, only

19  a within-guideline, 41 to 51 months, sentence will satisfy the

20  requirements and needs for sentencing as declared by our

21  Congress and as made the focus of Section 3553(a), especially

22  (a)(2).  However, all matters in mitigation convince me that

23  the sentence should be at the low end of the sentencing

24  guideline range, a sentence of 41 months, which I find is the

25  sentence sufficient, but not greater than necessary, to

1   satisfy the requirements and needs of Section 3553(a) and

2   specifically (a)(2).

3          Ironically, Mr. Winston is financially unable to pay

4   a fine or interest on restitution.  Therefore, no fine should

5   be imposed, and interest on restitution should be waived.

6          Here, by law, Mr. Winston is responsible for the

7   restitution first addressed in the presentence report in

8   paragraph 125 and then reiterated in somewhat more detail in

9   the sentencing recommendation, document 135-1, on page R-1.

10          As a result of the criminal conduct of Mr. Winston,

11   the following victims have sustained the following pecuniary

12   losses:  Capital Heights Pharmacy, in the amount of

13   $19,944.57, Hometown Pharmacy in the amount of $154,359, and

14   Medicine Shoppe Pharmacy in the amount of $27,298, for

15   restitution totaling $201,601.57.

16          That restitution is due and payable immediately,

17   failing which in an amount of not less than 10 percent of the

18   defendant's gross monthly income as determined periodically by

19   his probation officer, with all disputes and objections

20   resolved by the Court on motion and after hearing.  The

21   payment schedule is condign after considering 18 U.S.C.

22   Section 3664(f)(2)(A) through (C).

23          Although the parties have not objected to the

24   conditions of supervision recommended in the sentencing

25   recommendation, including the seven proposed special

1   conditions appearing on pages R-3 and R-4 in corresponding

2   paragraphs 1 through 7, I address their legality and propriety

3   sua sponte.  My analysis implicates 18 U.S.C. Section 3583(c)

4   and (d), as codified and construed, and Guidelines Section

5   5D1.3.  As required by Section 3583(c), I have considered

6   carefully, to the extent relevant, the factors enumerated in

7   Section 3553(a)(1), (a)(2)(B) through (D), and (a)(4) through

8   (7).  I find that each proposed and recommended special

9   condition is reasonably related to the nature and

10  circumstances of the offense of conviction and the history and

11  characteristics of Mr. Winston, the need for the condition to

12  afford adequate deterrence, to protect the public from further

13  crimes committed by Mr. Winston, while during supervised

14  release providing Mr. Winston with much needed educational and

15  vocational training, medical care, and other correctional

16  treatment in the most effective manner.  None involves any

17  greater deprivation of liberty than is reasonably necessary

18  for the foregoing statutory purposes, and each is consistent

19  with the pertinent policy statements issued by the Sentencing

20  Commission.  Thus all seven will be ordered.

21          Therefore, it is ordered as follows:

22          That the waiver and consent of Mr. Winston concerning

23  his right to appear in person or consent to appear remotely by

24  VTC are accepted and approved;

25           That the plea agreement of the parties as stated in

1    documents 124 and 125 in CM/ECF is approved;

2          That the defendant's motion for a sentence variance,

3    document 132, is denied;

4          That the Government's motion to dismiss counts,

5    document 139, is granted;

6          That judgment of conviction shall now enter on

7    Count 2 of the Superseding Indictment;

8          That it is the judgment and sentence of this Court

9    that the defendant, David Winston, be committed to the custody

10   of the Bureau of Prisons to be imprisoned for a term of 41

11   months;

12         That on release from imprisonment Mr. Winston shall

13   be placed on supervised release for a term of three years;

14         That within 72 hours of his release from imprisonment

15   and the custody of the Bureau of Prisons Mr. Winston shall

16   report in person to the United States Probation Office and

17   Department located within the federal district to which he is

18   released;

19         That while on supervised release Mr. Winston shall

20   comply with the mandatory, standard, and special conditions of

21   supervision identified and included in the sentencing

22   recommendation, document 135-1, on pages R-3 and R-4;

23         That no fine is imposed;

24         That Mr. Winston shall pay forthwith a special

25   victims fund assessment of $100;

1          That Mr. Winston shall pay restitution for the

2    benefit of the three victims and in the amounts identified in

3    the sentencing recommendation, document 135-1, on page R-1,

4    payable in care of the Clerk of the Court, in full in the

5    amount of $201,601.57, to be paid by the defendant severally

6    and jointly, if found liable, with codefendants Brainerd Clark

7    and Damien Lewis in 19-cr-86;

8          That restitution is due and payable in full

9    immediately, failing which in monthly installments of not less

10   than 10 percent of the defendant's gross monthly income as

11   determined periodically by his probation officer, with any

12   dispute or objection resolved by the Court on motion and after

13   hearing; provided furthermore interest on restitution is

14   waived;

15         That presentence confinement shall be determined by

16   the Bureau of Prisons.

17         Mr. Owen, I interrupt the dictation of my remaining

18   sentencing orders to inquire:  Does Mr. Winston seek the

19   recommendation of this Court to the Bureau of Prisons for any

20   specific designation?

21         MR. OWEN:  Yes, Your Honor.  Thank you.  He would

22   request that the Court give a recommendation that he be placed

23   in one of the facilities here in Colorado, as his home is in

24   Colorado Springs.

25         THE COURT:  Very well.  Any objection by the

1  Government?

2          MR. ST. JULIEN:  No objection at all, Your Honor.

3          THE COURT:  That the Court recommends that the Bureau

4  of Prisons designate Mr. Winston to an official detention

5  facility within the District of Colorado to facilitate his

6  continued interaction and communication with appropriate

7  members of his family;

8          And, lastly, that Mr. Winston is now remanded to the

9  custody of the United States Marshal, who shall transport him

10  as soon as practicable and with all deliberate speed to the

11  Bureau of Prisons, there to be received and kept in the manner

12  prescribed by law and consistent with the orders of this

13  Court.

14          Mr. Owen, I take the position that the sentence

15  imposed animates the waiver of appeal by Mr. Winston in his

16  plea agreement, obviating formal advisement under

17  Rule 32(j)(1) of his right to appeal.  If you disagree or

18  object, I'll receive and entertain your objection now.

19          MR. OWEN:  No objection, Your Honor.

20          THE COURT:  Very well.

21          I inquire, Counsel, is there further business in this

22  matter?  By the Government, Mr. St. Julien?

23          MR. ST. JULIEN:  No, Your Honor.

24          THE COURT:  Or the defense, Mr. Owen?

25          MR. OWEN:  No, Your Honor.

19-cr-00086-REB-3          Sentencing Hearing          10/28/2020   26

1              THE COURT:  Counsel, a pleasure as always.

2              Mr. Kruck, my thanks to you for a well written,

3     comprehensive, and helpful presentence investigation report.

4              Otherwise, we close the record, and the Court is in

5     recess.  Madam Clerk, please declare the recess of the Court.

6              COURTROOM DEPUTY:  Thank you, everyone.  Court is in

7     recess.

8          (Proceedings concluded 3:49 p.m.,

9          October 28, 2020.)

10
                        REPORTER'S CERTIFICATE
11
               I, JULIE H. THOMAS, Official Court Reporter for the
12    United States District Court for the District of Colorado, a
      Registered Merit Reporter and Certified Realtime Reporter,
13    CA CSR No. 9162, do hereby certify that I reported by machine
      shorthand the proceedings contained herein at the time and
14    place aforementioned and that the foregoing pages constitute a
      full, true and correct transcript.
15             Dated this 15th day of June, 2021.

16
                        _____
17                        /s/ Julie H. Thomas
                          Official Court Reporter

18

19

20

21

22

23

24

25

Julie H. Thomas, RMR, CRR                              (303)296-3056